UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BRITTANY M. GORDON, an individual, <br><br>Plaintiff, <br><br>v. <br><br>(1) NATHAN FOUNTAIN, individually and in his official capacity as an Edmond Police Officer; <br>(2) CITY OF EDMOND, a municipality; <br>(3) BOARD OF TRUSTEES FOR THE OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY; <br>(4) BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, OKLAHOMA; <br>(5) TURN KEY HEALTH CLINICS, LLC, an Oklahoma limited liability company; <br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____<br>**JURY TRIAL DEMANDED** |

FILED

JUN 09 2025

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY _____, DEPUTY

## COMPLAINT

The plaintiff Brittany Gordon ("Plaintiff" or "Gordon"), an individual, brings these claims and causes of action against Defendants Nathan Fountain, an individual ("Fountain"), the City of Edmond, a municipality ("Edmond"), Board of Trustees for the Oklahoma County Criminal Justice Authority, ("Jail Trust"), Board of County Commissioners of Oklahoma County, ("Oklahoma County"), and Turn Key Health Clinics, LLC ("Turn Key"). In support of this Complaint, Plaintiff alleges and states as follows:

## THE PARTIES

1. Plaintiff is an individual and resident of Oklahoma County, State of Oklahoma, and a United States citizen, who was a detainee at the Oklahoma County Detention Center and entitled to the protections afforded by the Fourteenth Amendment of the United States Constitution.

2. At all times material herein, Defendant Fountain is a Police Officer who, upon information and belief, resides in Oklahoma County, Oklahoma. Defendant Fountain is a police officer and an employee and/or agent of the Edmond Police Department. At all times material herein, Defendant Fountain was acting under color of state law and acted within the scope of his employment for Edmond. Regardless of his place of residence, the allegations against this defendant arise from his actions in Oklahoma and in this judicial district.

3. Defendant Edmond is an Oklahoma municipal corporation, operates the Edmond Police Department, and was at all times relevant hereto the employer of Fountain. Edmond is liable for the acts of Fountain, which were undertaken within the scope of his employment with Edmond.

4. Defendant Jail Trust is a public trust formed under the laws of the State of Oklahoma. The Jail Trust is a "person" for the purposes of 42 U.S.C. § 1983. The Trustees of the Jail Trust may "sue and be sued," "on behalf of and in the name of the Authority." At all relevant times, the Jail Trust was the ultimate operator of the Oklahoma County Detention Center and had final policy-making authority to establish policies and procedures thereto. The Jail Trust was responsible for training and

2

supervising jail employees; adopting, implementing, and enforcing jail policies; and for ensuring that the people in its custody received necessary medical care, as required under the United States Constitution and other laws.

5.     Defendant Oklahoma County is a municipal corporation, organized under the laws of the State of Oklahoma. Oklahoma County is a "person" for the purposes of 42 U.S.C. § 1983. At all relevant times, Oklahoma County owned and operated the Oklahoma County Detention Center. Oklahoma County was responsible for training and supervising jail employees; adopting, implementing, and enforcing jail policies; and for ensuring that the people in its custody received necessary medical care, as required under the United States Constitution and other laws. Although Oklahoma County sought to offload its jail medical operations by contracting with Turn Key, it remains liable for any negligence or unconstitutional policies or practices that resulted in harm to any person confined in the jail.

6.     Defendant Turn Key is a private, for-profit correctional healthcare limited liability company based in Oklahoma and doing business in Oklahoma. Turn Key is considered a "person" for purposes of 42 U.S.C. § 1983. At all relevant times, Turn Key acted under the color of state law and pursuant to a contract with the Jail Trust and/or Oklahoma County to provide necessary medical and mental health services to people confined at the Oklahoma County Detention Center. Turn Key was responsible for adopting, implementing, and enforcing policies pertaining to medical and mental health care for people confined at the jail. It was also responsible for ensuring that the care provided to those people met minimum constitutional standards and for ensuring

that its staff and contractors were adequately trained to provide care that met those standards.

## JURISDICTION AND VENUE

7.      This Court has original subject matter jurisdiction over Plaintiff's civil rights claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the causes of action present federal questions and involves a deprivation of civil rights arising under the federal constitution. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b), because the events, acts, and omissions complaint of occurred in Oklahoma County, Oklahoma which is located within the Western District for the United States District Court of Oklahoma.

## FACTUAL ALLEGATIONS

Plaintiff adopts and incorporates all the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

9.      On June 20, 2024, at approximately ten o'clock in the morning, Ms. Gordon was in a multi-vehicle car wreck near the intersection of W. Covell Rd. and N. Kelly Ave. in Edmond, Oklahoma, with her nine (9) year old daughter in the vehicle. The responding officer at the scene, Officer Julian Manzo with the Edmond Police Department, performed standard field sobriety tests on Ms. Gordon and ultimately arrested her under suspicion of driving a vehicle while under the influence without a warrant. Ms. Gordon's daughter was transported to OU Children's Hospital by ambulance.

10.     Despite Ms. Gordon being in a car wreck, Officer Julian Manzo took Ms. Gordon directly to the Edmond Municipal Jail where she was read the Implied Consent form to do a blood test. It was only after Ms. Gordon consented to the State's blood test that she was taken to a medical facility for the blood draw.

11.     Ms. Gordon was transported by Officer Julian Manzo to OU Medical in Edmond for the blood draw and to be medically evaluated for her injuries from the car wreck. No physical injuries were observed, and Ms. Gordon was medically cleared. Ms. Gordon was then transported back to the Edmond Municipal Jail for holding.

12.     Later that same day, at approximately eight o'clock in the evening, Ms. Gordon was transported to the Oklahoma County Detention Center by Sgt. Nathan Fountain, who is employed by the Edmond Police Department. While in transport, Ms. Gordon and Fountain began arguing about Ms. Gordon's handcuffs being too tight on her wrists. The argument between Ms. Gordon and Fountain continued at the Oklahoma County Detention Center during the intake procedures.

13.     Ms. Gordon was pat down and searched upon entering the Oklahoma County Detention Center by a female correctional officer, whose identity is unknown at this time, then physically instructed Plaintiff to walk further into the jail towards the nurse's station.

14.     While Ms. Gordon was walking towards the nurse's station, as instructed, Fountain aggressively shoved Ms. Gordon with his left hand on her chest and said, "Get back over there."

15. When Fountain pushed Ms. Gordon, there was a loud pop sound and Ms. Gordon fell backwards to the ground. Ms. Gordon was handcuffed behind her back when Fountain shoved her and was incapable of bracing or stopping herself from falling to the floor. Ms. Gordon immediately began screaming in pain and knew she had fractured or otherwise severely injured her left leg.

16. Instead of providing medical care, Fountain ordered for Ms. Gordon to get up. Fountain and the female correctional officer grabbed Ms. Gordon by the arms and forced her to stand on the injured leg. Fountain told Ms. Gordon and others in the room that Ms. Gordon fell down, implying that he did not shove her to the ground. While Ms. Gordon was screaming in pain, Fountain laughed at her. A male Oklahoma County deputy, a male Oklahoma Highway Patrol trooper, and a male Oklahoma City policeman, all of whose identities are unknown at this time, laughed at Ms. Gordon and did not offer any assistance.

17. With her injured leg, Ms. Gordon was forced to get up and was pinned with her face against the wall by multiple jailers. The female jail supervisor proceeded to disrobe and cavity search Ms. Gordon. Ms. Gordon was in so much pain she collapsed to the floor. Ms. Gordon was forced, again, to get up and walk to the nurse's station.

18. Others present at the time, whose identities are unknown, picked up Ms. Gordon back onto her feet and made her walk towards the nurse's station, screaming in pain, yelling that she could not walk, and begging for medical help. Ms. Gordon was told by a jailer that they were going to medical and she would get the help that she needed.

19. A nurse, whose identity is unknown, briefly examined Ms. Gordon's leg, but

did not provide any medical intervention or treatment. While in the nurse's station, the female jailer asked the nurse about Ms. Gordon's leg. The nurse responded that they have a procedure that is followed. The male jailer, who was instructed to get a wheelchair, told the female jail supervisor the wheelchair in a no go. Several correctional officers then made Ms. Gordon walk out of the nurse's station, despite Ms. Gordon asking multiple times about treatment for her leg and ankle. The female supervisor instructed the correctional officers to hold Ms. Gordon on both sides, claiming she likes to play the victim. Then the supervisor and Fountain both laughed.

20. Outside the nurse's station, Ms. Gordon was told by the same female correctional officer that motioned her towards the nurse's station that Ms. Gordon fell because she tripped, and that Fountain did not shove her down.

21. A correctional officer that placed Ms. Gordon in a holding cell turned off the lights in the cell and closed the door. Ms. Gordon repeatedly banged on the door and asked for the lights to be turned back on.

22. After approximately 20 minutes in the cell, Ms. Gordon was taken to the large general population area. While in general population, multiple other female inmates - seeing how swollen Ms. Gordon's leg was - started banging on the door to try and get someone to provide Ms. Gordon medical treatment, but still none was provided.

23. The evening of the following day, June 21, 2024, Ms. Gordon posted bond and was released from the Oklahoma County Detention Center. During the entire time she was detained in the jail, Ms. Gordon never received medical treatment for her leg.

24. On June 22, 2024, Ms. Gordon went to Access Medical Center where an x-ray was performed. Upon review of the x-ray images, Ms. Gordon was told she needed to go to Integris Emergency room.

25. At Integris, Ms. Gordon was diagnosed with a fractured fibula in two (2) separate places near the bottom of her leg. Integris hospital performed surgery on her lower leg and/or ankle that included inserting a medical rod to stabilize her joint.

26. The events complained of herein occurred after Ms. Gordon was arrested without a warrant and prior to a probable cause hearing.

27. The unconstitutional conduct alleged in this Complaint was carried out in accordance with the official policies and/or longstanding customs and practices of Turn Key, Oklahoma County, and/or the Jail Trust.

28. The Turn Key medical staff and/or the Oklahoma County correctional officers knew of Ms. Gordon's need for medical treatment and consciously chose to disregard Ms. Gordon's need. Knowing Ms. Gordon had suffered injury by excessive use of force, Turn Key medical staff and/or the Oklahoma County correctional officers did nothing. This constituted conscious indifference to Ms. Gordon's serious medical needs, was a serious breach of correctional duties, and a deviation from the standard of care. These failures put Ms. Gordon in substantial risk of further serious harm and suffering.

29. Defendant Turn Key permitted unconstitutional customs and practices regarding persons detained at the Oklahoma County Detention Center with serious medical needs. These customs and practices included failing to provide necessary

treatment to patients suffering from serious physical illnesses, failing to adequately monitor patients suffering from serious medical conditions, delegating responsibility for monitoring patients with serious medical needs to correctional officers who were not adequately trained or qualified for that task, and allowing physically ill individuals to be confined at the jail despite the insufficient resources to adequately care for them. These customs and practices subjected patients with serious medical needs to a substantial risk of suffering serious harm and resulted in Ms. Gordon's suffering.

30.     Defendants Oklahoma County and/or the Jail Trust permitted unconstitutional customs and practices regarding persons housed in the Oklahoma County Detention Center with serious medical needs. These customs and practices included failing to properly monitor and document the conditions and behavior of such persons, falsely documenting wellbeing checks that did not actually occur, and allowing medical staff to delegate responsibility for monitoring patients with serious physical illnesses to correctional officers who were not adequately trained or qualified for that task. These customs and practices subjected patients with serious medical needs to a substantial risk of suffering serious harm and resulted in Ms. Gordon's suffering.

31.     Defendants Oklahoma County and/or the Jail Trust failed to adequately train and supervise its staff to ensure that persons in their custody with serious medical needs received necessary treatment. This included failing to train and supervise staff on how to properly monitor and document the condition of persons in the jail, how to recognize when such persons need medical attention, and what to do if a person in custody is not receiving adequate medical care. Defendant Oklahoma County had notice

and was aware that these failures subjected people in its custody with serious mental or physical illness to a substantial risk of suffering serious harm, but it did not correct the failures. These failures resulted in Ms. Gordon's suffering.

### FIRST CAUSE OF ACTION

**Violation of Brittany M. Gordon's Fourth Amendment
Constitutional Rights Pursuant to 42 U.S.C. § 1983
Against Defendants Fountain and City of Edmond**

Plaintiff adopts and incorporates all the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

32. The Fourth Amendment "governs excessive force claims arising from 'treatment of [an] arrestee detained *without a warrant*' and '*prior to* any probable cause hearing.'" *Est. of Booker v. Gomez,* 745 F.3d 405, 419 (10th Cir. 2014) (*quoting Austin v. Hamilton,* 945 F.2d 1155, 1160 (10th Cir.1991)) (emphasis in original). "[E]xcessive force claims arising during this period are generally reviewed under a relatively exacting 'objective reasonableness' standard." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (*citing Graham v. Connor,* 490 U.S. 386, 394–95 (1989)). The reasonableness standard under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (*citing Tennessee v. Garner,* 471 U.S. 1, 8–9 (1985) (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

33. Defendant Fountain was employed by the City of Edmond and was acting within the scope of his employment under color of state law at all material times herein.

34. Defendant Fountain was not the officer that arrested Ms. Gordon, which was Officer Julian Manzo, rather Defendant Fountain was responsible for transporting Ms. Gordon from the Edmond Municipal Jail to the Oklahoma County Detention Center approximately ten (10) hours after Ms. Gordon was arrested.

35. Ms. Gordon was arrested without a warrant for suspicion of driving while under the influence, which is a misdemeanor offense under Oklahoma law.

36. At all times during the transport, and at all times material herein while Ms. Gordon was inside the Oklahoma County Detention Center, Ms. Gordon was handcuffed behind her back and posed no risk of harm to Defendant Fountain or others.

37. Ms. Gordon was pat down and searched upon entering the Oklahoma County Detention Center by a female deputy. Ms. Gordon was then instructed by that female deputy to walk further down the bay area towards the nurse's station. While Ms. Gordon was walking towards the nurse station, as instructed, Fountain aggressively shoved Ms. Gordon with his left hand on her chest with such force and violence as to cause Ms. Gordon to fall backwards onto her back. Ms. Gordon was handcuffed and unable to brace herself from the fall. Defendant Fountain shoved Ms. Gordon so aggressively that her fibula was fractured in half.

38. When Ms. Gordon was viciously shoved by Defendant Fountain, she was secured inside the Oklahoma County Detention Center and had no means of eluding

police and escaping arrest nor was she resisting arrest at the time she was shoved.

39. Defendant Fountain's excessive use of force was objectively unreasonable under a totality of the circumstances.

40. As a direct and proximate result of the above-referenced unlawful and malicious physical abuse of Ms. Gordon by Defendant Fountain, committed under color of law and under his authority as Edmond Police Officer, Ms. Gordon suffered grievous bodily harm and was deprived of her right to be secure in her person against unreasonable seizure of her person, in violation of the Fourth Amendment of the Constitution of the United States.

41. The actions of Defendant Fountain were objectively unreasonable and constituted the use of excessive force in violation of the Fourth amendment to the United States Constitution in that Mr. Gordon posed no danger to Defendant Fountain or to other members of the public at the time her injury was caused by Defendant Fountain.

42. Prior to the incident involving Ms. Gordon, Edmond had knowledge of several previous incidents involving members of the Edmond Police Department, including Defendant Fountain, wherein officers used excessive force on others. Edmond took no action to discipline Defendant Fountain, or other officers, or to order them not to repeat such incidents, thus tacitly authorizing such conduct. If Edmond had taken such remedial action, the abusive conduct towards of Ms. Gordon would not have occurred.

43. The City Council of Edmond is vested by state law with the authority

to make policy for Edmond on the use of force in making arrests and transporting pretrial detainees. The City Council members were aware of a pattern of excessive force by police officers employed by Edmond; they were aware that Edmond's policies regarding the discipline of officers accused of excessive force were so inadequate that was obvious that a failure to correct them would result in further incidents of excessive force; and the failure to correct said policies caused the excessive force to be used upon Ms. Gordon as set forth above. The allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further discovery.

44. Acting under color of law and pursuant to official policy, practice, or custom, Defendant Edmond intentionally, knowingly, and recklessly failed to instruct, supervise, control, and discipline on a continuing basis Defendant Fountain in the correct procedure for dealing with individuals in physical and/or mental distress, and for using appropriate reasonable force.

45. The failure of Edmond to properly train, supervise, regulate, and/or discipline officers who routinely use excessive force in making arrests including Defendant Fountain, or to otherwise control their employees and the failure to promulgate proper guidelines for the use of force constitutes official policy, practice, or custom of condoning unjustified use of force in violation of the constitutional rights of Ms. Gordon and others and serves to condone the illegal behavior as alleged. Each of the actions and inactions by Edmond constitute an unconstitutional policy or custom which violated Ms. Gordon's Fourth Amendment rights.

46. As a result of the Defendants Fountain's and Edmond's conduct, Ms.

Gordon incurred medical expenses, suffered physical pain, mental anguish, severe mental and emotional distress, and loss of consortium. Ms. Gordon should also be awarded punitive damages.

## SECOND CAUSE OF ACTION

### Violation of Brittany M. Gordon's Fourteenth Amendment Constitutional Rights Pursuant to 42 U.S.C. § 1983 Against All Defendants

Plaintiff adopts and incorporates all the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

47. The unconstitutional conduct alleged in this Complaint was carried out in accordance with the official policies and/or longstanding customs and practices of Turn Key, Oklahoma County, and/or the Jail Trust.

48. Defendants Turn Key, Oklahoma County, and/or the Jail trust permitted to exist unconstitutional customs and practices with regard to persons detained at the Oklahoma County Detention Center with serious medical needs. These customs and practices included failing to provide necessary treatment to patients suffering from serious physical medical conditions and/or injuries, failing to conduct wellbeing checks, allowing medical staff to delegate responsibility for monitoring patients with serious medical injuries to correctional officers who were not adequately trained or qualified. These customs and practices subjected patients with serious medical needs to a substantial risk of suffering serious harm and resulted in Ms. Gordon's unnecessarily prolonged suffering.

49. Defendants Oklahoma County and/or the Jail Trust failed to adequately

train and supervise its staff to ensure that persons confined in holding cells with serious medical needs received necessary treatment. This included failing to train and supervise staff on how to properly monitor and document the condition of persons in holding cells, how to recognize when such persons need medical attention, and what to do if a person in custody is not receiving adequate medical care. Defendant Oklahoma County had notice and was aware that these failures subjected people in its custody with serious mental or physical illness to a substantial risk of suffering serious harm, but it did not correct the failures.

50.     These glaring deficiencies put Oklahoma County Detention Center inmates at substantial risk of serious harm or death. Yet, despite warnings, Oklahoma County, Turn Key, and/or Jail Trust officials failed to fix the persistent problems. Ms. Gordon's suffering was a foreseeable consequence of these failures.

51.     Following Defendant Fountains malicious use of excess force and Ms. Gordon's broken fibula, all the information described in this Complaint was available to Defendants. Ms. Gordon screamed in agony and pleaded for help, yet none was rendered. In fact, the correctional officers and medical staff employed by Defendants Oklahoma County, Turn Key, and/or Jail Trust demanded that Ms. Gordon continue walking on her broken leg, refused to provide her a wheelchair, failed to properly support and/or splint her broken leg, failed to take her to a hospital or medical facility for appropriate medical care, failed to provide her any medication to alleviate her pain and agony, and repeatedly lied that Ms. Gordon "tripped and fell" to cause her injury. For his part, Defendant Fountain did not provide medical care, but instead ordered for Ms. Gordon to get up, told others in the

15

room that Ms. Gordon fell down and denied that he shoved her to the ground, and even laughed at Ms. Gordon while she was screaming in pain.

52. All acts and omissions committed by Defendants were committed with intent, malice, and/or with reckless disregard for Ms. Gordon's constitutional rights. These Defendants knew or should have known that their conduct, and the conduct of their employees, would naturally and probably result in injury or damage. Nevertheless, they continued the conduct with malice, deliberate indifference, and/or reckless disregard of the consequences.

53. Defendants, and the employees and agents of all entities, had a duty to treat Ms. Gordon in accordance with the applicable standards of medical and correctional care. Defendants repeatedly breached those duties, directly and foreseeably resulting in Ms. Gordon's damages, including her pain and suffering.

54. Defendants Oklahoma County and/or Jail Trust delegated their constitutional duties to provide persons in its custody with necessary medical care to Defendant Turn Key. Despite that delegation, Defendants Oklahoma County and/or Jail Trust had a continuing, non-delegable duty to ensure that its contracted jail medical provider was providing constitutionally adequate care to those in its jail. Defendant Oklahoma County and/or Jail Trust adopted and ratified Defendant Turn Key's policies, customs, and practices as its own. As such, Defendants Oklahoma County and/or Jail Trust are liable for any of Defendant Turn Key's unconstitutional policies, customs, or longstanding practices that resulted in harm to any person confined in the jail, including Ms. Gordon.

## THIRD CAUSE OF ACTION

### Intentional Infliction of Emotional Distress
### Against Defendants Fountain and City of Edmond

Plaintiff adopts and incorporates all the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

55.  Defendant Fountain's actions described above, taken within the scope of his employment as an Edmond Police Officer, were so extreme and outrageous as to go beyond all possible bounds of decency and intentionally or recklessly caused severe emotional distress to Ms. Gordon beyond that which a reasonable person could be expected to endure.

56.  As a result of Defendant Fountain's actions, Ms. Gordon seeks damages for incurred medical expenses, physical pain, mental anguish, severe mental and emotional distress, loss of consortium, and further seeks punitive damages.

## FOURTH CAUSE OF ACTION
### Negligence
### Against Defendants Fountain and City of Edmond

Plaintiff adopts and incorporates all the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

57.  Defendant Fountain's actions described above were taken within the scope of his employment as an Edmond Police Officer. Defendant Fountain owed a duty of care to Ms. Gordon as a pretrial detainee in Defendant Fountain's care and custody. Defendant Fountain owed a duty to Ms. Gordon to use only the minimal force necessary to obtain compliance with lawful commands. Defendant Fountain owed a duty of care to provide or obtain medical care for Ms. Gordon after he injured her.

58.     Defendant Fountain knew, or should have known, that the violent shove against Ms. Gordon while handcuffed behind her back was unreasonable under the circumstances.

59.     Defendant Fountain's breach of his duty of care was the direct and proximate cause of Ms. Gordon's broken leg.

60.     Ms. Gordon, therefore, is entitled to damages sustained as a result of Defendant Fountain's negligent conduct.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray respectfully requests that judgment be entered in favor of Plaintiff and against Defendants for the damages set forth below, along with court costs, pre-judgment and post-judgment interest at the legal rate:

A) Actual financial damages and losses;

B) Consequential and incidental damages;

C) Pain and suffering (past and future);

D) Wage loss (past and future);

E) Loss of earnings and loss of earning capacity;

F) Loss of enjoyment of life (past and future);

G) Mental anguish and distress (past and future);

H) Attorney's fees;

I) Punitive or exemplary damages in such amounts as may be proven at trial; and

J) For all such other damages or equitable relief which Plaintiff may show are justly entitled under the facts and circumstances of this case.

Respectfully submitted,

_____
Brittany M. Gordon
702 E. 27th Pl.
Edmond, OK 73013
(405) 920-7805
Bgordon929@gmail.com
Appearing Pro Se