**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| BRITTANY M. GORDON, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-25-619-D |
| NATHAN FOUNTAIN, *et al.*, | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court for review of the Report and Recommendation ("Report") [Doc. No. 59] issued by Magistrate Judge Chris M. Stephens pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). The report recommends granting Defendant Turn Key Health Clinics, LLC's Motion to Dismiss [Doc. No. 37]. [Doc. No. 59]. Plaintiff timely objected. [Doc. No. 61]. Accordingly, the Court must make a *de novo* determination of those portions of the Report to which a specific objection is made, and may accept, modify, or reject the recommended decision in whole or in part. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

**BACKGROUND**

Plaintiff brought this civil rights action under 42 U.S.C. § 1983, alleging violations of her constitutional rights, and asserted a state-law tort claim of medical negligence against Turn Key Health Clinics, LLC ("Turn Key"). [Doc. No. 32].

Plaintiff's claims against Turn Key arise from when Officer Nathan Fountain was purportedly assisting with Plaintiff's intake at the Oklahoma County Detention Center

("OCDC") on June 20, 2024. *Id.* at p. 5-6. During her processing at OCDC, Plaintiff alleges that Officer Fountain pushed her while she was handcuffed causing her to fall and injure her leg. *Id.* at p. 6, ¶¶ 14-16. Specifically, she asserts that she "immediately began screaming in pain and knew she had fractured or otherwise severely injured her left leg." *Id*. at p. 6, ¶ 15. Further, Plaintiff alleges that Officer Fountain did not provide her with medical care, but ordered her to get up, told others in the room that she had fallen, and laughed at her. *Id.* Plaintiff asserts that she was then "made to walk towards the nurse's station, screaming in pain, yelling that she cannot walk, and begging for medical help." *Id.* at p. 6, ¶ 17.

Plaintiff asserts that a female medical provider briefly examined her leg, but did not provide any medical intervention or treatment, and made her walk out of the nurse's station. *Id.* at p. 7, ¶ 18. Moreover, Plaintiff alleges that during the cavity search performed by the nurses she collapsed to her knees due to her leg pain. *Id.* at p. 7, ¶ 20. Plaintiff asserts that during her incarceration she was never provided medical treatment for her leg. *Id.* at p. 8, ¶ 24. Plaintiff further alleges that when she was released, she sought medical care and was diagnosed with a fractured fibula, which required surgery to repair. *Id.* at p. 8.

In support of her claims against Turn Key, Plaintiff alleges that Turn Key's "unconstitutional conduct" was "carried out in accordance with [its] … official policies and/or longstanding customs and practices." *Id.* at p. 8, ¶ 28. Specifically, Plaintiff alleges that Turn Key and its personnel:

> permitted unconstitutional customs and practices regarding persons detained at the [OCDC] with serious medical needs. These customs and practices included failing to provide

> necessary treatment to patients suffering from . . . serious medical conditions, delegating responsibility for monitoring patients with serious medical needs to correctional officers who were not adequately trained or qualified for that task, and allowing physically ill individuals to be confined at the jail despite the insufficient resources to adequately care for them. These customs and practices subjected patients with serious medical needs to a substantial risk of suffering serious harm and resulted in Ms. Gordon's suffering.

*Id.* at p. 9, ¶ 30; *see also Id.* at p. 15-16, ¶ 49.

Moreover, Plaintiff alleges that "Turn Key failed to adequately train and supervise its staff to ensure that persons confined in holding cells with serious medical needs received necessary treatment. This included failing to train and supervise staff on how to properly monitor and document the condition of persons in holding cells, how to recognize when such persons need medical attention, and what to do if a person in custody is not receiving adequate medical care." *Id.* at p. 15, ¶ 50. Plaintiff alleges that such deficiencies put OCDC inmates at substantial risk of harm. *Id*. Moreover, that "despite warnings, Turn Key . . . officials failed to fix the persistent problems." *Id.* at ¶ 51.

Turn Key filed its motion for dismissal of Plaintiff's § 1983 claim and medical negligence claim. [Doc. No. 37]. Turn Key argues that Plaintiff failed to allege sufficient facts to state a claim for municipal liability against Turn Key. *Id.* Additionally, Turn Key argues that Plaintiff failed to sufficiently allege facts demonstrating that she suffered an underlying constitutional deprivation. *Id.* Moreover, Turn Key contends that pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA") it is immune from individual liability for its tortious conduct. *Id.* Accordingly, Turn Key requests that Plaintiff's claims against it be dismissed. *Id.*

In response, Plaintiff argues that her § 1983 claim should not be dismissed because she has properly pleaded a constitutional violation and municipal liability. [Doc. No. 50]. Moreover, she argues that her claim for medical negligence is not barred by the OGTCA because the issue of whether Turn Key is a "governmental employee" is an issue of fact, and thus whether Turn Key is entitled to immunity cannot be determined at this juncture. *Id*.

Judge Stephens recommends that the Court grant in part Turn Key's motion, because Plaintiff has failed to adequately plead her § 1983 claim against Turn Key. [Doc. No. 59]. Furthermore, Judge Stephens recommends that the Court should refrain from determining whether the medical negligence claim warrants dismissal, because the Court should not exercise supplemental jurisdiction over the claim. *Id.*

Plaintiff objects to Judge Stephens' determination that she has not sufficiently pleaded her § 1983 claim. [Doc. No. 61]. Additionally, Plaintiff asserts that the Court should exercise supplemental jurisdiction over her medical negligence claim because judicial economy, fairness, and comity under 28 U.S.C. § 1367(c) support exercising supplemental jurisdiction, as other claims against other Defendants arising from the same case and controversy remain active in this case. *Id.*

## STANDARD OF DECISION

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff."

*Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I. Monell Liability.

As recognized by Judge Stephens, a municipality is "included among those persons to whom § 1983 applies," but it can only be held liable if it has an "official municipal policy of some nature" that "'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-92 (1978) (citing 42 U.S.C. §

1983). "A 'single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability.'" *Soto for estate of Jimenez v. Bd. of Cnty. Comm'rs of Caddo Cnty., Okla.*, 748 F. App'x 790, 794 (10th Cir. 2018) (quoting *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009)). Thus, "'[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). This doctrine applies equally to private entities acting under the color of state law, such as medical contractors. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 n.13 (10th Cir. 2003).

To state a Monell claim against a medical contractor under Section 1983, a plaintiff must allege facts showing "(1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation." *Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th Cir. 2022); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (describing the three elements of a § 1983 municipal-liability claim as "(1) official policy or custom, (2) causation, and (3) state of mind"). Each of the following may constitute an official policy:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure

> results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and citation omitted).

Here, Plaintiff relies upon the second and fifth forms of policy. [Doc. No. 32, at p. 14-15].

**A. An informal custom amounting to a widespread practice, that is so well settled as to constitute a custom or usage with the force of law.**

The Court first looks to whether Plaintiff's allegations constitute "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788.

Plaintiff alleges the existence of four Turn Key policies or customs. Plaintiff asserts that Turn Key has a custom of:

1. failing to provide necessary treatment to patients suffering from serious medical conditions,

2. delegating responsibility for monitoring patients with serious medical needs to correctional officers who were not adequately trained or qualified for that task,

3. allowing physically ill individuals to be confined at the jail despite the insufficient resources to adequately care for them, and

4. failing to conduct wellbeing checks.

[Doc. No. 32, at p. 9-10, ¶¶ 30-31]. Plaintiff gives no factual matter to support her assertions. For instance, Plaintiff provides no examples of Turn Key failing to provide

necessary medical care, delegating the monitoring of patients to correctional officers, allowing physically ill individuals to be confined to jail despite insufficient resources, or failing to conduct well-being checks on patients. Plaintiff asserts only that Turn Key's alleged failure to provide adequate medical treatment to her reflects a custom of not providing sufficient medical care to those incarcerated at OCDC. However, as noted *supra.*, "[a] 'single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability.'" *Soto for estate of Jimenez*, 748 F. App'x at 794.

**B. Failure to adequately train or supervise with deliberate indifference to the injuries that may be caused.**

The Court next looks to whether Plaintiff adequately alleges that Turn Key failed "to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson*, 627 F.3d at 788. The Tenth Circuit has explained the deliberate indifference requirement:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Id.* at 789 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998)).

**1. Notice through a pattern of tortious conduct.**

The Court agrees with Judge Stephens' determination that Plaintiff failed to sufficiently allege factual allegations that Turn Key had notice through a "'pattern of similar constitutional violations by untrained employees.'" [Doc. No. 59, at p. 10 (quoting *Valdez v. Macdonald*, 66 F.4th 796, 816 (10th Cir. 2023)]. Indeed, Plaintiff alleges that "despite warnings" Turn Key "failed to fix the persistent problems." [Doc. No. 32, at p. 15, ¶ 51]. However, Plaintiff fails to provide any factual allegations in the Amended Complaint regarding the "warnings" or "persistent problems" that she is referencing. Moreover, Plaintiff's attempt to supplement her allegations through her objection to the Report is improper. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *see also Abolaji v. Impact Sports Performance, LLC*, No. 23-cv-02453-GPG-STV, 2024 WL 6987373, at *3 (D. Colo. June 4, 2024) ("A plaintiff may not defeat a motion to dismiss by alluding to facts that have not been alleged, [or] by suggesting matters that were not pleaded . . . in the complaint.").

**2. Violation of federal rights was highly predictable.**

The Court also agrees with Judge Stephens' determination that Plaintiff failed to sufficiently plead factual allegations to support her claim that it was highly predictable that a violation of constitutional rights would occur due to Turn Key's failure train. [Doc. No. 59, at p. 10-11]. In support of Plaintiff's claim, she alleges that Turn Key failed to train and supervise its staff on how to ensure those confined received necessary medical treatment, how to properly monitor and document the medical conditions of those confined, and what

to do if an individual in custody is not receiving adequate medical treatment. [Doc. No. 32, at p. 15, ¶ 50].

However, these allegations are insufficient. Indeed, single-incident-based municipal liability for failure to train is "rare" and arises only "in a narrow range of circumstances where a violation of federal rights may be a highly predictable consequence . . .." *Valdez*, 66 F.4th at 815-16. "It is insufficient to show there were 'general deficiencies' in the training program." *Harris v. Regalado*, No. 25-CV-539-JFJ, 2026 WL 2322951, *8 (N.D. Okla. Aug. 11, 2026) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)). Moreover, "'[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Here, Plaintiff has failed to assert sufficient factual allegations to support her claim that Turn Key failed to adequately train its personnel. Plaintiff also fails to allege that there have been other prior instances of purported constitutionally inadequate care by Turn Key personnel at OCDC or other jail facilities involving Turn Key personnel.

Accordingly, Plaintiff failed to adequately plead *Monell* liability. Thus, the Court agrees with Judge Stephens' conclusion that the Court need not determine whether Plaintiff also adequately pleaded an underlying constitutional violation. [Doc. No. 59, at p. 12]. Therefore, Plaintiff's § 1983 claim against Turn Key warrants dismissal.

**II. Medical Negligence.**

Plaintiff argues and the Court agrees that it should exercise supplemental jurisdiction over her medical negligence claim against Turn Key. Section 1367(a) provides

that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. The district court, however, may decline to exercise this supplemental jurisdiction if the claim "raises a novel or complex issue of State law, the claim substantially predominates over the claim . . . over which the district court has original jurisdiction, the district court has dismissed all claims over which it has original jurisdiction, or … exceptional circumstances" provide compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

Plaintiff has also asserted claims against Defendants Nathan Fountain and Board of Trustees for the Oklahoma County Criminal Justice Authority, over which the Court has original jurisdiction. The medical negligence claim is related to the federal claims against these Defendants, and arises out of the same case and controversy. At this pleading stage, the Court cannot say that there is an appropriate reason to decline supplemental jurisdiction over Plaintiff's negligence claim against Turn Key. Thus, the Court proceeds to analyze the reasons for dismissal argued by the parties.

The parties dispute whether Turn Key is entitled to immunity under the OGTCA. The OGTCA provides that "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment . . . shall be immune from liability for torts." Okla. Stat. tit. 51, § 152.1(A). Moreover, "[a]n employee of the state or its political subdivision who operates or maintains a jail or correctional facility is exempt from state tort liability under the [OGTCA]." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127,

1147 (10th Cir. 2023) (citing Okla. Stat. tit. 51, § 155(25)). The term "employee" includes "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." Okla. Stat. tit. 51, § 152(7)(b)(7).

Plaintiff argues that a determination of immunity at this juncture would be improper because the Tenth Circuit in *Lucas* found that a determination of whether Turn Key was entitled to immunity under the OGTCA was not proper at the pleading stage, because it could not be determined whether Turn Key constituted an "employee." *Lucas*, 58 F.4th at 1148. However, the *Lucas* opinion was based on "no Oklahoma court" having addressed the issue outside of dicta. *Id.* at 1147. Since then, the Oklahoma Supreme Court has made clear that the OGTCA:

> [M]akes licensed medical professionals to be "employees" of this state, regardless of the place in this state where duties as employees are performed, when the licensed medical professionals are under contract, including when under contract as an independent contractor, with city, county, or state entities and providing medical care to inmates or detainees in the custody or control of law enforcement agencies.

*Sanders v. Turn Key Health Clinics, LLC*, 2025 OK 19, ¶ 57, 566 P.3d 591, 610.

In *Sanders* similar claims were brought against Turn Key as the ones Plaintiff alleges here. Indeed, in *Sanders* the plaintiff filed a petition alleging that Turn Key "caused the wrongful death of Sanders's wife as a result of her confinement" in an Oklahoma jail. *Id.* at ¶ 2, 595. After four weeks in custody, she was transported to a hospital where she was diagnosed with, among other things, severe sepsis, acute kidney injury, and anemia. *Id.* The trial court granted Turn Key's motion to dismiss pursuant to Okla. Stat. tit. 12, §

2012(B)(6), finding it to be "immune from liability" under the OGTCA. *Id.* Reviewing the trial court's grant of the motion to dismiss, the Oklahoma Supreme Court held that under the OGTCA, "the status of an 'employee' occurs when the nature of the act is a (1) licensed medical professional, (2) under contract with a city county or state entity, (3) providing medical care, (4) to inmates or detainees in the custody or [control of] law enforcement agencies." *Id.* at ¶ 41, 606. It further found that the petition alleged that "employees" of Turn Key were "contracted to provide medical care to inmates." *Id.* at ¶¶ 51-55, 609-10.

Here, Plaintiff's Amended Complaint is similar to the petition in *Sanders.* Plaintiff alleges that "[a]t all relevant times, Turn Key acted . . . pursuant to a contract with the Board of Trustees for the Oklahoma County Criminal Justice Authority to provide necessary medical and mental health services to people confined at the [OCDC]." [Doc. No. 32, at p. 3-4, ¶ 5]. Thus, in accordance with *Sanders*, dismissal of Plaintiff's medical negligence claim against Turn Key is warranted. *See Miles v. Rogers Cnty. Bd. of Comm's*, 783 F. Supp. 3d 1314, 1324 (N.D. Okla. 2025) (dismissing the plaintiff's negligence claim against Turn Key because pursuant to the OGTCA and *Sanders*, Turn Key was immune from liability); *Robinson v. Turn Key Health Clinics, LLC*, No. 24-CV-0622-CVE-MTS, 2026 WL 788150, at *8 (N.D. Okla. Mar. 20, 2026) (same); *Crawford v. Turn Key Health Clinics, LLC*, No. 24-cv-6-JDR-SH, 2025 WL 1885637, at *7 (N.D. Okla. July 8, 2025) (same).

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Report and Recommendation [Doc. No. 59] is **ADOPTED** in part as set forth herein. Accordingly, Defendant Turn Key Health

Clinics, LLC's Motion to Dismiss [Doc. No. 37] is **GRANTED**. Plaintiff Brittany M. Gordon's claims against Defendant Turn Key Health Clinics, LLC are **DISMISSED WITHOUT PREJUDICE**.[1]

**IT IS SO ORDERED** this 21st day of September, 2026.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

[1] Plaintiff's request for leave to amend her Complaint in her response to Defendant's motion to dismiss is improper and does not comply with Fed. R. Civ. P. 15(a) or LCvR 15.1. A district court may properly require a plaintiff to file a motion that complies with Fed. R. Civ. P. 15(a) and LCvR 15.1 before considering whether to allow an amendment. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021).